J-S50033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.-A.V.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 514 EDA 2017 |

Appeal from the Order Entered January 9, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001219-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: L.S.A.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 515 EDA 2017 |

Appeal from the Order Entered January 9, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001220-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: S.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 516 EDA 2017 |

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-DP-0001295-2012

IN THE INTEREST OF: L.C., A MINOR   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
APPEAL OF: E.D., FATHER   :
  :
  :
  :
  :
  :
  :   No. 518 EDA 2017

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001912-2014

BEFORE: PANELLA, MOULTON, and RANSOM, JJ.

MEMORANDUM BY RANSOM, J.:      **FILED SEPTEMBER 27, 2017**

E.D. ("Father") appeals from the decrees dated and entered on January 9, 2017, granting the petitions filed by the Philadelphia Department of Human Services ("DHS" or the "Agency"), and involuntarily terminating his parental rights to his female children, S.C. a/k/a S.-A.V.C. (born in June of 2011), and L.C., a/k/a L.S.A.C. (born in January of 2014) (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and the orders changing the Children's permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351, dated and entered on January 19, 2017.[1] Father's counsel, Gary S. Server ("Counsel"), has filed with this

---

[1] In separate decrees entered on January 9, 2017, the trial court terminated the parental rights of any unknown father of the Children. Moreover, in separate decrees entered on January 19, 2017, the trial court also terminated the parental rights of the Children's mother, V.C., ("Mother"). Mother has filed separate appeals at Docket Nos. 596, 603, and 605 EDA
*(Footnote Continued Next Page)*

- 2 -

Court a motion for leave to withdraw as counsel and a brief pursuant to

***Anders v. California***, 386 U.S. 738, 744 (1967).  We affirm, and grant

Counsel's motion.

In its opinion entered on March 24, 2017, the trial court set forth the

factual background of this appeal, as follows.

> . . . Prior to the birth of the Children, on October 23, 2010, the Children's family became known to the Department of Human Services ("DHS") through a Child Protective Services ("CPS") report alleging Father caused the death of the Children's sibling, "S."  An autopsy of [S.] revealed evidence of pre-existing trauma and injuries.  On October 25, 2010, DHS learned that the City of Philadelphia Police Department's Homicide Unit had begun investigating [S.'s] death.  On October 25, 2010, DHS met with V.C. ("Mother") and E.D. ("Father") in their home and interviewed them separately.  Mother stated that she was at work when [S.] died.  Father stated that [S.] was in the shower where she went into shock.  DHS determined that Father's account was not credible.
>
> On October 26, 2010, the Medical Examiner's Office informed DHS that [S.'s] death was deemed a homicide and the cause of death was multiple blunt impact injuries.[3]  On October 26, 2010, DHS obtained an Order for Protective Custody ("OPC") for [Ny.] and [Sy.], the biological children of Mother but not Father.  [Ny.] and [Sy.] were in the care of Mother and Father when [S.] died.
>
> On June [   ], 2011, Mother gave birth to S.C., the biological daughter of Father.  On July 31, 2012, the Honorable Jonathan Irvine adjudicated SC dependent and issued a criminal stay away order against Father and also ruled that aggravated

*(Footnote Continued)* ────────────

2017, which we address in a separate Memorandum.  No unknown father has filed an appeal, nor is any such individual a party to the present appeal.

circumstances existed as to Mother and Father and that no efforts were to be made to reunify SC with Father[.] Thereafter, Father was found guilty on drug felong [sic] related offenses[4].

_____

[2] Father was not the biological father of [S.] but the Children had the same biological mother[,] V.C. ("Mother").

[3] On October 26, 2010, DHS also learned that [S.] suffered from cardiac arrest.

*[Footnotes continued on next page.]*

On January [  ], 2014, LC was born.[5]  On June 21, 2014, DHS made an unannounced visit to Mother's home and found Father at the home in violation of the stay away order.  At the adjudicatory hearing on March 12, 2015, LC was adjudicated dependent by the Honorable Jonathan Irvine and Father was ordered to stay away from LC.

On June 29, 2015, CUA held a Single Case Plan ("SCP") meeting.  The objectives identified for Father were (1) to keep contact with CUA; (2) to comply with a Parental Care Evaluation ("PCE"); (3) [to] comply with the stay away order and (4) [to] comply with Skype [v]isits.

On July 31, 2016, Dr. William Russell, Ph.D., conducted a PCE for Father.  Dr. Russell recommended (1) Father obtain and maintain consistent employment; (2) Father obtain housing; (3) Father participate in counseling to determine how he contributed to [S.'s] death; (4) Father complete SCP plan recommendations; and (5) [v]isitation should not be increased until there was progress with employment, housing, and counseling.  The report also cited that Father's conduct with [S.] indicated a lack of ability to anticipate and react to situtations [sic] that are potentially dangerous to children.

On November 17, 2016, DHS received as [sic] ("GPS") report alleging that Mother was unable to protect the Children and their siblings.  Specifically, Father and Mother were still in a relationship despite of a Protection from Abuse Order ("PFA"); and that Father had been incarcerated for the offense of Endangering the Welfare of a Child for two years on August 23, 2012[.]

_____

[4]  Father plead guilty to Intent to Manufacture/Delivery/ Possession of a Controlled Substance pursuant to 35 [P.S.] § 780-113 on October 23. [sic] 2012.

[5] A paternity test determined that Father was the biological parent of LC.

Trial Court Opinion (Father), 3/24/17, at 1-5 (footnotes in original) (citations omitted).

On December 9, 2016, DHS filed petitions to terminate Mother and Father's parental rights to the Children and to change the Children's permanency goal to adoption. On January 9, 2017, the trial court held a hearing on the termination/goal change petitions. At the hearing, counsel for DHS, Mother and her counsel, Father and his counsel, and the Child Advocate, were present. DHS presented the testimony of Tieshima Brown, a case manager and social worker at the Community Umbrella Agency ("CUA"), Turning Points for Children; Courtney Ransom, a program analyst for DHS; Dr. Erica Williams, Psy.D., a psychologist who is the Director of Forensic Mental Health Services; Dr. William Russell, Ph.D., a forensic psychologist who works at Forensic Mental Health Services, who evaluated both Mother and Father; and Darren Hughes, a Truancy Intake Worker at DHS.

Both Mother and Father testified on their own behalf. Counsel for the parties, including child advocate, stipulated that the maternal grandfather, who was present, would testify that he attends all of Mother's unsupervised visits with the Children, and that Father had never been present at an unsupervised visit between Mother and the Children. *Id.* at 163. At the

conclusion of the hearing the trial court terminated Father's parental rights as to S.C. and L.C. and held Mother's case under advisement.

On January 9, 2017, the trial court entered its decrees terminating Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and orders changing their permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351. On January 12, 2016, DHS filed a motion to reopen the termination/goal change hearing to supplement the record. The trial court issued a rule to show cause on January 13, 2017. Subsequently, on January 19, 2017, the trial court granted the motion to reopen the termination/goal change hearing to supplement the record with evidence that Father had been near Mother and two of her children, Aa. and Au., who are not subjects of this appeal.

On January 19, 2017, the trial court held a second day of hearing on the termination/goal change petitions as pertained to the termination of Mother's parental rights and the request for a goal change, which the trial court had held in abeyance. At the hearing on January 19, 2017, counsel for DHS, Mother and her counsel, and Child Advocate were present. However, Mother did not testify. Father was not present, nor was his counsel. Ms. Brown testified with regard to Father's contact with the Children and the other children of Mother, Aa. and Au., despite the stay away orders. N.T., 1/19/17, at 8. DHS also had an exhibit admitted that demonstrated that Father was having contact with the Children with Mother's knowledge and

assistance. *Id.* at 8-16; DHS Ex. 1. At the conclusion of the hearing, based on the evidence at the hearing on January 9, 2017 and the testimony and additional evidence at the hearing on January 19, 2017, the trial court found that Mother had allowed Father to have access to her children, and ordered her parental rights to the Children terminated. *Id.* at 16-17. The trial court again entered orders changing the permanency review goal for the Children to adoption on January 19, 2017. *See* Trial Court Opinion (Father), 3/24/17, at 1.

On February 1, 2017, Father filed the notices of appeal from the decrees entered on January 9, 2017 terminating his parental rights to the Children, and the permanency review orders entered on January 19, 2017, changing the permanency goal for the Children to adoption, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2] This Court, acting *sua sponte*, consolidated Father's appeals on March 22, 2017. On May 15, 2017, Counsel filed a motion for leave to withdraw as counsel for Father and an ***Anders*** brief.

In his ***Anders*** brief, Father raises two issues challenging the sufficiency of the evidence to support the termination of his parental rights

---

[2] Father's trial counsel, Attorney Janice M. Sulman, filed the notices of appeal and concise statements on behalf of Father. Subsequently, the trial court permitted Attorney Sulman to withdraw as counsel, and appointed Counsel to represent Father.

to Child. **See Anders** Brief; Father's Concise Statement at 1. Those issues are as follows:

> THE GLOBAL QUESTION
>
> WHETHER THERE IS ANYTHING IN THE RECORD THAT MIGHT ARGUABLY SUPPORT THE APPEAL THAT OBVIATES A CONCLUSION THAT THE APPEAL IS FRIVOLOUS[?]
>
> SPECIFIC AREAS OF INQUIRY
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY TERMINATING FATHER'S PARENTAL RIGHTS WHERE THE DEPARTMENT OF HUMAN SERVICES DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT FATHER HAD NOT RELIEVED THE CIRCUMSTANCES WHICH BROUGHT THE CHILD INTO CARE OR COULD NOT RELIEVE THEM WITHIN A REASONABLE AMOUNT OF TIME.
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY TERMINATING FATHER'S PARENTAL RIGHTS WHERE THERE IS NO CLEAR AND CONVINCING EVIDENCE THAT FATHER HAS EVIDENCED A SETTLED PURPOSE OF RELINQUISHING PARENTAL CLAIM TO THE CHILD OR HAS REFUSED OR FAILED TO PERFORM PARENTAL DUTIES[?]
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY TERMINATING FATHER'S PARENTAL RIGHTS AS THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO BREAK THE BOND THE CHILD SHARED WITH FATHER WHERE THERE WAS NO CLEAR AND CONVINCING EVIDENCE THAT THE CHILD WOULD NOT BE HARMED BY THE TERMINATION[?]
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AND CHANGED THE CHILD'S GOAL TO ADOPTION AS SUBSTANTIAL, SUFFICIENT AND CREDIBLE EVIDENCE WAS PRESENTED AT THE TIME OF TRIAL WHICH WOULD HAVE SUBSTANTIATED DENYING THE PETITION FOR GOAL CHANGE[?]

*Anders* Brief, at 6-7.

Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and
>
> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

In *In re V.E.*, 611 A.2d 1267, 1274-75 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. "When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *In re S.M.B.*, 856 A.2d at 1237.

In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

> (1)  provide a summary of the procedural history and facts, with citations to the record;
>
> (2)  refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)  set forth counsel's conclusion that the appeal is frivolous; and

- 9 -

> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

With respect to the third requirement of *Anders*, that counsel inform the defendant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Here, in his motion for leave to withdraw, Counsel has complied with each of the requirements of *Anders*. Counsel indicates that he conscientiously examined the record and determined that an appeal would be frivolous. Further, counsel's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Finally, attached to his motion for leave to withdraw is a copy of his letter to Father, dated May 13, 2017. In compliance with *Millisock*, the letter advised Father of his right to proceed *pro se* or retain alternate counsel, and stated counsel's intention to seek permission to withdraw. Accordingly,

Counsel has complied with the procedural requirements for withdrawing from representation, and we will proceed with our own independent review.[3]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold

---

[3] This Court has stated, "[o]nce counsel has satisfied the above requirements [for a motion to withdraw and *Anders* brief], it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (quoting *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa. Super. 2004)). *See Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (following *Goodwin*). Thus, we address whether DHS established the grounds for termination.

record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (*quoting* ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

In the ***Anders*** brief, Counsel contends, on behalf of Father, that the trial court abused its discretion or erred as a matter of law in concluding that DHS presented clear and convincing evidence that was sufficient to support the involuntary termination of his parental rights under section 2511(a)(1), (2), (5), (8), and (b), and the goal change to adoption.

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section

2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Section 2511(a)(2) and (b) provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

 **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and

the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

**In re Adoption of J.J.**, [511 Pa. 599, 605,] 515 A.2d 883, 891 (Pa. 1986) (*quoting* **In re: William L.**, [477 Pa. 322, 345,] 383 A.2d 1228, 1239 (Pa. 1978).

**In re Adoption of S.P.**, 616 Pa. at 326-327, 47 A.3d at 827.

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **In re A.L.D.** 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. **Id.** at 340.

The trial court addressed Father's sufficiency issue as follows.

> SC was adjudicated dependent on July 31, 2012. LC was adjudicated dependent on March 12 2015. The record demonstrated Father's ongoing unwillingness to provide care or control for the Children: his inability or refusal to perform any parental duties and his failure to remedy the conditions that brought the Children into care. These facts provided the [c]ourt clear and convincing evidence that termination of Father's parental rights would be in the best interest of the Children

warranting the termination of Father's parental rights by the [c]ourt pursuant to 23 Pa.C.S.A. §§2511(a). . .(2) . . . and (b).

The SCP objectives identified for Father were (1) to keep contact with CUA; (2) to comply with a Parental Care Evaluation ("PCE"); (3) comply with the stay away order and (4) comply with Skype Visits. (Statement of Facts: Petition to Terminate the Parental Rights Paragraph YY). The [f]ather's PCE recommendations were that[:] (1) Father obtain and maintain consistent employment; (2) Father obtain housing; (3) Father participate in counseling to determine how he contributed to [S.'s] death; (4) Father complete his SCP plan recommendations; (5) [v]isitation would not be increased until progress with employment, housing, and counseling.

At the termination hearing on January 9, 2017, the CUA Representative [Ms. Brown] testified that Father had not met his SCP objectives nor [sic] the PCE recommendations. The CUA Representative testified that Father did not attempt to visit the Children via Skype on a regular basis. The only times he did complete visits by Skype were achieved when the CUA Representative contacted Father directly. When Father did speak to the Children via Skype the conversations did not exceed three minutes. (N.T. January 9, 2017 pages 90-92). The CUA Representative testified that Father had not completed therapy and Father made no effort to send letters to the Children. (N.T. January 9, 2017 Page 94). The CUA Representative testified that Father rarely contacted the CUA Representative. (N.T. January 9, 2017 Page 95). Consequently, the CUA Representative was also able to testify that Father was not in a position to provide for his [c]hildren because he had not reached his SCP goals. . . . [*Id.*]

At the termination hearing, Dr. Russell testified that the findings from the PCE showed Father minimized his role in the death of [S.] and that Father needed housing and stable employment, and therapy. Dr. Russell also testified that Father[,] by not taking part in therapy[,] indicated a lack of interest in becoming a full[-]time parent. (N.T. Testimony January 9, 2017 Page 68-73). Father's own testimony demonstrated that he was convicted and incarcerated for the death of [S.] but that he refused to take full responsibility for the underlying cause of [S.'s] death[.] (N.T. January 9, 2017 Pages 140-49). The testimony of Mother demonstrated that Father and

- 15 -

Mother jointly violated the Stay Away Order (N.T. January 9, 2017 Page 160) with impunity.

The testimony of the CUA Representative and Dr. Russell was deemed to be credible and accorded great weight. Based upon this testimony as well as the documents in evidence, this [c]ourt found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a). . . (2). . . [,] as Father had failed to remedy the conditions that brought the Children into care.

Trial Court Opinion (Father), 3/24/17, at 6-9 (footnotes omitted).

After a careful review of the record, we find that termination of Father's parental rights to the Children was warranted pursuant to section 2511(a)(2), as Father clearly lacks parental capacity, and the evidence showed that he will be unable to remedy that situation within a reasonable period of time, if ever. As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we would find no abuse of the trial court's discretion in terminating Father's parental rights to the Children under section 2511(a)(2). *In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27.

Next, this Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S. § 2511(b).  The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability."  **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012).  In **In re E.M.**, [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.  **In re K.M.**, 53 A.3d at 791.

*In re: T.S.M.*, 620 Pa. 602, 628-629, 71 A.3d 251, 267 (2013).

With regard to section 2511(b), the trial court stated the following:

> The CUA Representative [Ms. Brown] also testified that it would be in the best interest of the Children for Father's parental rights to be terminated.  (N.T. January 9, 2017 Page 96).  The CUA Representative testified that the termination of Father's parental rights would not harm the Children and the [f]ather had violated the stay away orders in reference to the Children.  [*Id.*]

> * * *

> The [c]ourt . . . concluded that the termination of the Father's parental rights would be in the best interest of the Children pursuant to 23 Pa.C.S.A. § 2511(b)[,] and that the termination of Father's parental right would not cause permanent harm to the Children.

> * * *

> **CONCLUSION**

> This [c]ourt, after careful review of the findings of fact and the testimony presented during the Termination Hearing on January 9, 2017, found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S. [§] 2511(a). . . (2) . . . .  This court further found pursuant to 23 Pa.C.S. [§] 2511(b) that termination of the [f]ather's parental rights would not have a detrimental effect on the Children and would be in the Children's best interest.  For the foregoing reasons, this

- 17 -

> [c]ourt respectfully requests that the January 9, 2017 Order terminating Father's parental rights to the Children be AFFIRMED.

Trial Court Opinion (Father), 3/24/17, at 8-10.

After a careful review of the record, we find that termination of Father's parental rights to the Children was warranted pursuant to section 2511(b). Ms. Brown testified that she believed that the termination of Father's parental rights was in the best interest of the Children, and that the Children would not be harmed if Father's rights were terminated. N.T., 1/9/17, at 95-96. She further testified that Father does not call and ask how the Children are doing, if they are up-to-date on their medical needs, and whether they are receiving any specialized services, although he could call Ms. Brown if he so desired. *Id.* at 96. Ms. Brown also testified that it is an objective of the 90-day plan for Father to comply with the stay-away orders with regard to the Children. *Id.* The trial court found Ms. Brown's testimony credible. Counsel for DHS asked the trial court to take judicial notice of the December 2015 court order that provided that Father attended only four of twelve Skype visits with the Children. *Id.* at 108. S.C. was adjudicated dependent when she was thirteen months old and removed from Mother's care, and Father was ordered to stay away from her. L.C. was adjudicated dependent when she was approximately fourteen months old, and Father was ordered to stay away from her. In light of the fact that Father did not have much interaction with the Children after their removal,

the trial court could have reasonably concluded that there is no bond between Father and them.

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs

of the child. ***See In re K.Z.S.***, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." ***In re Adoption of C.L.G.***, 956 A.2d at 1007 (citing ***In re Z.S.W.***, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we would find no abuse of the trial court's discretion in terminating Father's parental rights to the Children under section 2511(b). ***In re Adoption of S.P.***, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27. We, therefore, affirm the termination decrees.

Next, we address whether there was sufficient evidence in the record to support the change in the Children's permanency goal to adoption. The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows.

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of: L.Z.*, *A Minor Child*, 641 Pa. 343, 360, 111 A.3d 1164, 1174 (2015).

Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

When considering a petition for goal change for a dependent child, the trial court considers:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S. § 6351(f)).

Additionally, Section 6351(f.1) requires the trial court to make a determination regarding the child's placement goal:

> **(f.1) Additional determination.—**Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> \* \* \*
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S. § 6351(f.1).

On the issue of a placement goal change, this Court has stated:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, 393 Pa. Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent . . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re E.F.V.*, 315 Pa. Super. 246, 461 A.2d 1263, 1267 (1983) (citation omitted).

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006).

We find that there was sufficient evidence in the record to support the change of the Children's permanency goal to adoption. We, therefore, affirm the goal change orders.

Moreover, as we agree with Counsel that Father's appeal is frivolous, and we cannot find any meritorious issues in the record, we grant counsel's motion for leave to withdraw.

Decrees and orders affirmed. Counsel's motion for leave to withdraw granted. Jurisdiction relinquished.

*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/27/2017*